UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOUTHERN-OWNERS INSURANCE
COMPANY,

    Plaintiff,

v.                              Case No. 8:21-cv-1510-VMC-TGW

TASMAN SERVICES LLC and JAMIE
LYNN BAUMGARTNER,

    Defendants.
_____/

**ORDER**

    This matter comes before the Court upon consideration of Plaintiff Southern-Owners Insurance Company's <u>Daubert</u> Motion (Doc. # 55), Southern-Owners' Motion for Summary Judgment (Doc. # 54), and Defendants Tasman Services LLC and Jamie Lynn Baumgartner's Motion for Summary Judgment (Doc. # 56), all filed on April 15, 2022. Tasman and Baumgartner have responded to both of Southern-Owners' Motions (Doc. ## 57; 58) and Southern-Owners has replied. (Doc. ## 60; 61). Southern-Owners has responded to Tasman and Baumgartner's Motion for Summary Judgment. (Doc. # 59). For the reasons that follow, both of Southern-Owners' Motions are granted, and Tasman and Baumgartner's Motion is denied.

I.   **Background**

A. **The Insurance Dispute**

Southern-Owners initiated this action against Baumgartner and Tasman on June 22, 2021, asserting a claim for declaratory relief. (Doc. # 1). Southern-Owners was the insurer for Tasman when a vehicle leased by Tasman was in an automobile accident with Baumgartner in 2016. (Id. at 2-4). The accident involved a leased U-Haul operated by Tasman's employee, Kasey Mitchell. (Doc. # 56 at 2). Baumgartner brought suit in state court against multiple defendants, including Tasman, alleging Tasman was vicariously liable for the injuries Baumgartner sustained in the automobile accident. (Doc. # 1-2 at ¶¶ 11-16) (the "Underlying Action"). The present action arises out of the parties' dispute over whether the Southern-Owners policy covers Baumgartner's claims in that action. (Doc. # 1 at 3-5). Southern-Owners thus seeks a declaration that there is no coverage under the policy for defense or indemnity of the state court action. (Id. at 6).

At the time of the accident, Southern-Owners insured Tasman under a Commercial General Liability Policy (the "CGL Policy"). (Doc. # 1 at ¶ 9). The CGL Policy includes a Commercial General Liability Coverage Form, which excludes

coverage for bodily injury or property damage arising out of Tasman's use of rented or loaned automobiles. (Doc. # 1-1 at 27). However, Tasman also purchased a Commercial General Liability Plus Endorsement (the "CGL Plus Endorsement") from Southern-Owners, which expands coverage for bodily injury or property damage arising out of Tasman's use of an automobile that "[Tasman] do[es] not own" and "which is used in [Tasman's] business." (Id. at 15). The coverage applies so long as Tasman "do[es] **not** have any other insurance available to [it] which affords the same or similar coverage." (Id.) (emphasis added). The per occurrence limit is $1 million. (Id. at 6).

At the time of the accident, Tasman was also afforded liability protection under the U-Haul lease agreement. (Doc. # 54-3 at 2-3). The agreement provided Tasman and any authorized driver with "the minimum limits required by the automobile financial responsibility or compulsory insurance law of the jurisdiction in which the accident occurs." (Id. at 3). Under Florida law, these minimum limits are $20,000 ($10,000 per person) of bodily injury liability coverage and $10,000 of property damage liability coverage. (Doc. # 1-4 at 1). The agreement also provided statutorily required PIP benefits. (Id.). However, the agreement stated that "[t]he

3

protection provided . . . is excess or secondary to any insurance coverage of the Customer [Tasman] or the Authorized Driver [Mitchell]." (Id. at 5).

At the time of the accident, Mitchell was insured under a Florida Family Insurance Policy issued by GEICO. (Doc. # 1-3). The GEICO Policy provided coverage for bodily injury and property damage arising out of Mitchell's use of an automobile, as well as PIP benefits, UM/UIM coverage, and a handful of other protections. (Id. at 4). The per occurrence limit for bodily injury coverage was $20,000 ($10,000 per person). (Id.). The policy provided for up to $25,000 in property damage liability coverage. (Id.).

Southern-Owners thus seeks a declaration that the CGL Plus Endorsement policy does not provide coverage to Tasman in the Underlying Action. (Doc. # 1 at 6). On August 12, 2021, Tasman counterclaimed for a declaratory judgment that Southern-Owners is obligated to fully defend and indemnify Tasman in the Underlying Action. (Doc. # 10 at 10). The parties' dispute centers on the meaning of "similar coverage" and whether it unambiguously includes the GEICO and U-Haul policies such that Southern-Owners is not obligated to provide coverage to Tasman under the CGL Plus Endorsement Policy.

The parties now both seek entry of summary judgment in their favor. (Doc. ## 54, 56). Each party has responded (Doc. ## 57, 59) and Southern-Owners has replied. (Doc. # 61). The Motions are now ripe for review.

### B. **The Expert Testimony**

Southern-Owners filed Tasman and Baumgartner's Notice of Expert disclosure with its Motion in Limine. (Doc. # 55-1). In the Notice, Tasman and Baumgartner provide the expert report of Jeffrey M. Posner, an insurance and risk management professional with experience in the insurance, brokerage, and risk management fields. (Id. at 1). Mr. Posner's expert report includes five opinions, all of which Southern-Owners objects to. (Id. at 2-4; Doc. # 55 at 2).

Mr. Posner's report compares a policy with a coverage limit of $1 million with a policy with a limit of $10,000, opining that "an insurance professional would not refer to these policies as containing the same or similar coverage." (Doc. # 55-1 at 3). Mr. Posner explains that his opinion is not "on what the policy means when it refers to other coverage being the same or similar" but rather is offered to "explain to the Court how insurance professionals go about comparing insurance policies to determine the difference (or

similarities) between the coverage afforded by different insurance policies and programs." (Id. at 3).

Southern-Owners filed a Daubert motion to exclude Mr. Posner's testimony. (Doc. # 55). Tasman and Baumgartner responded (Doc. # 58) and Southern-Owners has replied (Doc. # 61). The Motion is now ripe for review.

## II.  **Legal Standard**

### A. **Daubert Motion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping

function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005). The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010).

> The district court must assess whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id.

**B. Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the

existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary

judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

III. **Analysis**

The Court will address Southern-Owners' Motion in Limine first, followed by Southern-Owners' Motion for Summary Judgment, and then Tasman and Baumgartner's Motion for Summary Judgment.

A. **Daubert Motion**

Southern-Owners seeks to exclude the expert testimony of Jeffrey M. Posner on the grounds that it lacks the usefulness required by Rule 702 of the Federal Rules of Evidence and constitutes an ultimate legal conclusion. (Doc. # 55 at 2).

Southern-Owners also argues that Mr. Posner's testimony is contrary to binding precedent and is irrelevant under Rule 401 of the Federal Rules of Evidence. (Doc. # 55 at 2). Because these arguments are not necessary to resolve the current dispute, the Court addresses only whether Mr. Posner's testimony is admissible under Rule 702.

Southern-Owners does not challenge Mr. Posner's qualifications or the reliability of his testimony. Rather, Southern-Owners argues that Mr. Posner's testimony is not

helpful to the trier of fact because it is an impermissible legal conclusion. (Doc. # 55 at 2).

Again, to be admissible, expert testimony must assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand,'" . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

Southern-Owners argues that Mr. Posner's opinion on how members of the insurance industry would interpret "similar coverage" is an impermissible legal conclusion. (Doc. # 55 at 9). "An expert witness may not testify as to his opinion regarding ultimate legal conclusions." U.S. v. Delatorre, 308 F. App'x 380, 383 (11th Cir. 2009). Indeed, "[a] witness . . . may not testify to the legal implications of conduct; the court must be the jury's only source of law." Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990).

In Florida, "the initial determination of whether a contractual term is ambiguous is a question of law for the court." Escobar v. United Auto. Ins. Co., 898 So. 2d 952, 954 (Fla. 3d DCA 2005). Although expert testimony may be admissible to assist the jury determine factual issues, questions of fact in contract interpretation arise only upon a finding of ambiguity. Campaniello v. Amici P'ship, 832 So. 2d 870, 872 (Fla. 4th DCA 2002) ("[W]hen the terms of a written instrument are disputed and rationally susceptible to more than one construction, an issue of fact is presented . . . ."). Expert testimony purporting to interpret the terms of a contract is therefore proper only after a court has determined contractual language to be ambiguous. See Armstead v. Allstate Property & Cas. Ins. Co., No. 1L14-cv-586-WSD,

12

2016 WL 4123838, at *5 (N.D. Ga. July 1, 2016) ("The Court finds that there is no ambiguity in the policy and that [the] expert opinions are not required for the Court to determine whether ambiguity exists . . . . The question of what the contract provisions mean is for the Court to determine."); Lincoln Adventures, LLC v. Certain Underwriters at Lloyds of London, No. 05-60444-CIV-COHN/SNOW, 2005 WL 8156837, at *2 (S.D. Fla. Dec. 16, 2005) ("[E]xpert testimony is usually not necessary in interpreting an insurance contract, because there are no issues of fact to resolve.")

Thus, the admissibility of Mr. Posner's testimony turns on whether the interpretation of "similar coverage" presents a question of fact. Here, the Court is guided by the Eleventh Circuit's finding in Southern-Owners Insurance Co. v. Easdon Rhodes & Associates LLC, 872 F.3d 1161, 1166 (11th Cir. 2017), that "similar coverage" is unambiguous. While the Florida Supreme Court has not addressed the issue of whether "similar coverage" is ambiguous, the First District Court of Appeal has favorably cited Easdon for the proposition that "the plain meaning of similar coverage is insurance coverage that covers a similar risk" in Walls v. Southern Owners Insurance Company, 321 So. 3d 856, 860 (Fla. 1st DCA 2021).

In Easdon, interpreting the terms of the same policy at issue here, the Eleventh Circuit found that the contract phrase "similar coverage" refers to the "inclusion of a specific risk in an insurance policy." Id. The Eleventh Circuit explained that "the Endorsement's exclusion clause remains solely concerned with whether the other available insurance protects against the same risks as the Endorsement rather than whether it offers the same overall level of protection." Id.

Despite Easdon, Tasman and Baumgartner offer Mr. Posner's testimony to demonstrate that the phrase "similar coverage" is ambiguous. Tasman and Baumgartner argue that Mr. Posner's testimony serves as "expert evidence establishing that there exists at least one 'reasonable interpretation' . . . of the policy term 'similar coverage' that affords coverage to Tasman," thereby creating ambiguity. (Doc. # 58 at 5). Tasman and Baumgartner thus make clear that the purpose of the expert testimony is to provide a basis upon which the Court can find ambiguity. (Id.).

Tasman and Baumgartner's position mischaracterizes the relevant law. Although Tasman and Baumgartner cite to Florida and federal cases permitting expert testimony to clarify the terms of insurance contracts, these cases focus on the use of

14

expert testimony to elucidate issues of *fact*. (Doc. # 56 at 10-11). See <u>Red Carpet Corp. of Panama City Beach v. Calvert Fire Ins. Co.</u>, 393 So. 2d 1160, 1161 (Fla. 1st DCA 1981) ("We feel that had the expert testimony been allowed in the present case, the jury would have been better informed as to the meaning of the policy terms . . . and, therefore, better equipped to property resolve the *issues of fact*.") (emphasis added); <u>see also Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d 1537, 1541 n.9 (11th Cir. 1990) (noting that cases stating that courts may admit expert testimony on the meaning of an insurance contract, such as <u>Red Carpet Corp.</u>, "appear inconsistent with the Florida Supreme Court cases holding that interpretation of an insurance contract is a question of law to be decided by the judge").

The Court thus agrees with Southern-Owners that Mr. Posner's testimony is not helpful to a jury because "similar coverage" is unambiguous as a matter of law, such that testimony meant to demonstrate ambiguity is not useful. While extrinsic evidence may be permissible upon a finding of ambiguity, Tasman and Baumgartner may not manufacture ambiguity by introducing expert testimony purporting to interpret a phrase the Eleventh Circuit has already found to be clear. See <u>Emergency Assoc. of Tampa, P.A. v. Sassano</u>, 664

So. 2d 1000, 1002 (Fla. 2d DCA 1995) (explaining that extrinsic evidence may be admissible to interpret *ambiguous* contractual terms) (emphasis added). There is therefore no issue of fact in dispute that expert testimony would help clarify. Rather, the parties dispute whether "similar coverage" is an ambiguous term such that it should be construed against Southern-Owners. (Doc. # 54 at; Doc. # 56 at 3).

In short, because the Eleventh Circuit has already found "similar coverage" to have an unambiguous meaning, expert testimony on how insurance professionals would compare policies is not useful to a jury, and Mr. Posner's testimony is excluded for this reason.

## B. **Southern-Owner's Motion for Summary Judgment**

Plaintiff Southern-Owners moves for summary judgment on the basis that its duty to defend Tasman in connection with the Underlying Action can be resolved as a matter of law. Specifically, Southern-Owners argues that Tasman's CGL Plus Endorsement policy does not provide coverage for the underlying action because of the clause in the policy that states the policy applies only if the policyholder "do[es] not have any other insurance available to [it] which affords the same or similar coverage." (Doc. # 54 at 5-6). According

to Southern-Owners, the GEICO and U-Haul policies constitute "similar coverage" under the terms of the CGL Endorsement such that the Tasman is not entitled to coverage under the CGL Endorsement. (Id. at 12; Doc. # 1 at ¶ 16).

### 1.   Definition of Similar Coverage

In a diversity action, the Court must apply "the substantive law of the forum state." Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Here, Florida law governs whether Southern-Owners owed Tasman a duty to defend against Baumgartner's suit in state court.

Under Florida law, the terms used in an insurance contract are given their ordinary meaning, and the policy must be construed as a whole "to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). An unambiguous policy provision is "enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Hagen v. Aetna Cas. & Sur. Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996).

The terms of the CGL Plus Endorsement covering Tasman state that the policy applies so long as Tasman "do[es] **not** have any other insurance available to [it] which affords the

17

same or similar coverage." (Doc. # 1-1 at 15) (emphasis added). At issue here is whether the GEICO and U-Haul policies unambiguously constitute "similar coverage" within the meaning of the CGL Policy Endorsement, which would relieve Southern-Owners of its duty to defend.

Southern-Owners contends that the phrase "similar coverage" unambiguously includes the GEICO and U-Haul policies, and thus the underlying accident does not trigger coverage under the CGL Policy Endorsement. Tasman and Baumgartner argue that the phrase is ambiguous, and so under Florida law must be construed "against the drafter." (Doc. # 56 at 6); Anderson, 756 So. 2d at 34. Specifically, Tasman and Baumgartner argue that "similar coverage" could be construed to refer to coverage that is similar *both* as to the type of risk covered and as to the amount and application of coverage. (Doc. # 56 at 13–14). Such a definition, according to Tasman and Baumgartner, would render the GEICO and U-Haul policies dissimilar from the CGL Plus Endorsement, and so the exclusionary provision of the latter would not apply. (Id. at 14). Resolution of the parties' dispute thus turns on whether "similar coverage" is ambiguous.

The Eleventh Circuit has found that the phrase "similar coverage" as used in Southern-Owners' CGL Plus Endorsement

18

Policy unambiguously refers to the "inclusion of a specific risk in an insurance policy." Easdon, 872 F.3d at 1167. The Eleventh Circuit's determination thus ends the inquiry into whether "similar coverage" is ambiguous.

While Tasman and Baumgartner argue that the present case is distinguishable from Easdon because of expert testimony purporting to interpret the term "similar coverage," the Court has determined that Mr. Posner's testimony is not admissible under Federal Rule of Evidence 702. The Court thus applies the law as articulated by the Eleventh Circuit. See Dorsey v. United States, No. 8:16-cv-1253-MSS-AEP, 2019 WL 11720285, at *5 (M.D. Fla. Jan. 10, 2019) ("This Court is obligated to follow the holdings of published Eleventh Circuit opinions.").

The Eleventh Circuit has held that "similar coverage" as used in Southern-Owners CGL Plus Endorsement unambiguously refers to "the inclusion of a specific risk in an insurance policy." Easdon, 872 F.3d at 1167. Accordingly, the Court applies this definition of "similar coverage" to determine whether the GEICO and U-Haul policies fall within the scope of the CGL Plus Endorsement exclusion.

## 2.   **The GEICO and U-Haul Policies**

The CGL Plus Endorsement policy that Tasman holds with Southern-Owners extends coverage for bodily injury and property damage "only if [the insured] do[es] **not** have any other insurance available . . . which affords the same or similar coverage." (Doc. # 1-1 at 15) (emphasis added). Given the definition of "similar coverage" as coverage that extends to the same insurable risk, the only remaining question is whether the GEICO and U-Haul policies cover similar risks as the CGL Plus Endorsement Policy.

The parties do not dispute that the various insurance policies cover similar risks. (Doc. # 56 at 3–4, 11). Indeed, the GEICO policy covering Mitchell provides coverage for bodily injury and property damage arising out of Mitchell's use of an automobile. (Doc. # 1-3 at 4). Likewise, the U-Haul policy provides coverage to Tasman and any authorized driver for bodily injury and property damage. (Doc. # 1-4 at 5). The CGL Plus Endorsement covers bodily injury or property damage arising out of Tasman's use of an automobile that Tasman does not own and is used in Tasman's business. (Doc. # 1-1 at 15). Regardless of the specific policy limits, the three policies cover the same specific insurable risks – bodily injury and

property damage arising out of Tasman's use of an automobile in its business.

Accordingly, because the GEICO and U-Haul policies provide similar coverage as the CGL Plus Endorsement, the exclusions section of the CGL Plus Endorsement policy applies. Tasman is not entitled to coverage under the CGL Plus Endorsement policy. Because the CGL Plus Endorsement is inapplicable to the Underlying Action, Southern-Owners does not have a duty to defend or on indemnify Tasman as a matter of law and summary judgment for Southern-Owners is warranted.

**C. Tasman and Baumgartner's Motion for Summary Judgment**

As the Court has already determined that summary judgment in favor of Southern-Owners is appropriate, the Court denies Tasman and Baumgartner's Motion for Summary Judgment (Doc. # 56).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiff Southern-Owners Insurance Company's Daubert Motion (Doc. # 55) is **GRANTED.**

(2)  Plaintiff Southern-Owners Insurance Company's Motion for Summary Judgment (Doc. # 54) is **GRANTED.**

(3)   Defendants   Tasman   Services   LLC   and   Jamie   Lynn
      Baumgartner's Motion for Summary Judgment (Doc. # 56) is
      **DENIED**.

(4)   The Clerk shall enter judgment for Plaintiff and against
      Defendants and, thereafter, **CLOSE** this case.

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this
16th day of September, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE